1  Alison Gutierrez (Admitted Pro Hac Vice)
   (Nebraska State Bar No. 24025)
2  **KUTAK ROCK LLP**
   1650 Farnam Street
3  Omaha, Nebraska 68102
   Telephone: (402) 346-6000
4  Facsimile: (402) 346-1148

5  Christopher D. Glos (State Bar No.: 210877)
   **KUTAK ROCK LLP**
6  Suite 1500
   5 Park Plaza
7  Irvine, CA 92614
   Telephone:   (949) 417-0999
8  Facsimile:   (949) 417-5394

9  Attorneys for Plaintiffs
   GENERAL ELECTRIC CAPITAL
10 CORPORATION, CEF FUNDING II, L.L.C.
   and CEF FUNDING V, LLC

11

12                UNITED STATES DISTRICT COURT

13      FOR THE EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

14 GENERAL ELECTRIC CAPITAL              Case No.  2:09-cv-03296-JAM-AC
   CORPORATION; CEF FUNDING II, L.L.C.
15 and CEF FUNDING V, LLC,               Assigned to Judge:
                                         Hon. John A. Mendez, Ctrm.: 6
16              Plaintiffs,
                                         Assigned to Magistrate:
17 v.                                    Hon. Allison Claire, Ctrm.: 26

18 TEN FORWARD DINING, INC.;             [PROPOSED] ORDER ON
   et. al.                               PLAINTIFFS' MOTION FOR
19                                        APPOINTMENT OF A POST-
                                         JUDGMENT RECEIVER TO
20              Defendants.              MANAGE, MAINTAIN AND SELL

21                                       Date:      June 19, 2013
                                         Time:      9:30 a.m.
22                                       Ctrm.:      6

23                                       Complaint Filed on:  November 25, 2009

24        On June 19, 2013 at 9:30 a.m. in Courtroom 6 of the above-entitled Court, located

25  at 501 I Street, Sacramento, California  95814, the Motion of Plaintiffs General Electric

26  Capital Corporation ("GECC"), CEF Funding II, L.L.C. ("CEF II") and CEF Funding V,

27  LLC ("CEF V") (collectively, "Plaintiffs") for an Order appointing a post-judgment

28

KUTAK ROCK LLP
ATTORNEYS AT LAW
    IRVINE

4831-4458-7795.3                    - 1 -                  2:09-cv-03296-JAM-AC

FILED

JUL 31 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
              DEPUTY CLERK

1   receiver to carry out the judgment (the "Post-Judgment Receiver Motion") came up for

2   hearing.

3       After consideration of the moving and opposing papers, the Order of the Court is as

4   follows:

5       (a)     Bellann Raile of Cordes & Company (the "Receiver") is hereby appointed

6   as the post-judgment receiver for the purposes of carrying out the final judgment entered

7   in this case (the "Judgment") against each of Ten Forward Dining, Inc. ("Ten Forward"),

8   Delightful Dining, Inc. ("Delightful Dining"), TGIA Restaurants, Inc. ("TGIA"), Kobra

9   Restaurant Properties, LLC ("Kobra") and Abolghassem Alizadeh ("Alizadeh")

10  (collectively, the "Kobra Defendants" or the "Defendants");

11      (b)     The Receiver shall have the power to sell, by public sale or sales at a time

12  and place to be determined by the Receiver, subject to the requirements of 28 U.S.C.

13  §§ 2001(a) 2002 and 2004, all or any portion of that certain collateral identified in

14  Exhibits A through I attached hereto, collectively known as the "Collateral," or so much

15  of it as may be necessary to satisfy the Judgment amounts due and owing to Plaintiffs.

16  Specifically, the Receiver shall exercise such sale powers pursuant to and in accordance

17  with the sale and application of proceeds provisions of the Judgment;

18      (c)     The Receiver shall have the power to market the Collateral and to schedule

19  the public sales when the Receiver determines that such Collateral has been sufficiently

20  exposed to the market;

21      (d)     The Receiver shall also have the power, in her sole discretion and under her

22  direction, to provide reasonable access, subject to the rights of any tenants then holding

23  valid leasehold possessory rights, to interested parties and potential bidders to review and

24  inspect the Collateral;

25      (e)     On completion of the sale of any portion of the Collateral, the Receiver shall

26  execute and deliver to the purchaser at the sale or sales, and the purchaser may record, a

27  certificate of sale to or as directed by the purchaser, who may then take possession of that

28  portion of the Collateral;

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-4458-7795 3                      - 2 -                      2:09-cv-03296-JAM-AC

(f)     In addition to the power to sell the Collateral in order to satisfy the judgment amount, the Receiver shall have the rights, powers and authorities listed below, as may be exercised in the Receiver's reasonable discretion to the extent necessary to protect the Collateral during the post-judgment period and/or to maximize the value of the Collateral in advance of the public sale(s):

(1)     To immediately enter on and take exclusive control and custody of all the Collateral with full power and authority, as Receiver, to take the same into her possession and to incur expenses as may be necessary or advisable in connection therewith, and to deal generally with the Collateral as this Court from time to time may order;

(2)     To bring suit for, collect, receive and to take into her possession all the Collateral; to institute, prosecute, compromise or defend suits and actions at law or in equity relating to the Collateral, other than the present action and to use and exercise all authority usually granted to receivers in the operation and management of the Collateral;

(3)     To immediately take whatever steps are necessary to secure, maintain and protect the Collateral, including, without limitation, the right to notify any banks and/or other financial institutions in which the Collateral (including all tenant security deposits) may be located to turn over such amounts to the Receiver and to notify all tenants to turn over all rents that may be due and owing relating to the occupancy of the Collateral;

(4)     To operate, manage, maintain or lease the Collateral, in whole or in part, as may be in the best interests of the receivership estate, provided that such lease, if any, is approved by Plaintiffs;

(5)     To demand, collect and receive all rents, profits and income derived from the Collateral, or any part thereof, including all proceeds in the possession of the Kobra Defendants which are derived from and/or generated by the Collateral;

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-4458-7795.3                - 3 -                2:09-cv-03296-JAM-AC

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL

1

2

3

4

5

6

(6)     To bring and prosecute all actions necessary for the operation, maintenance and preservation of the Collateral, including, but not limited to, actions for the collection of rents, profits and income derived from the Collateral, removal from the Collateral of persons not entitled to entry thereon, protection of the Collateral, damage caused to the Collateral, recovery of possession of the Collateral, and any other action or proceeding to effectuate the terms of this Order;

7

8

9

10

(7)     To appeal any real estate or property tax assessments relating to or against any of the Collateral and have any such existing appeals transferred to the Receiver by way of substitution as the party-in-interest thereunder or by any other procedurally required method;

11

12

13

14

15

16

(8)     To hire, employ and retain any person, firm, attorneys, certified public accountants, investigators, security guards, consultants, management companies, brokers and any other personnel, employees or professionals as are reasonably necessary to represent, advise and assist the Receiver with respect to the Collateral, subject to prior authorization of this Court, as required under L.R. 232(g);

17

18

19

20

21

(9)     To retain environmental specialists to perform environmental inspections and assessments of the Collateral, if deemed necessary and, if deemed necessary and advisable in the discretion of the Receiver and funds are available, to remediate the Collateral or remove and dispose of contaminants, if any, affecting the Collateral;

22

23

24

25

26

27

(10)     To confirm that the Collateral is adequately insured and in proper repair, to promptly report any evidence or findings to the contrary to the parties and to the Court and, if necessary and funds are available, to disperse funds for the maintenance of fire, hazard and liability insurance for the Collateral, with the understanding that all such insurance shall be maintained in compliance with the applicable loan documents;

28

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL

(11)   To take possession and control of the originals or copies of all the books, records, correspondence, insurance policies and accounts of Kobra Defendants relating to the Collateral whether in the possession and control of any of the Kobra Defendants or their agents, servants or employees of Kobra Defendants;

(12)   To be added as an insured, in its capacity as Receiver, to the current insurance policies in effect, including, but not limited to, any hazard and liability insurance policies, with respect to any and all of the Collateral;

(13)   To obtain copies of any and all plans, specifications and drawings pertaining to or effecting any part or all of the Collateral and to be authorized to obtain such plans, specifications and drawings from the Kobra Defendants, from architects and contractors retained or formerly retained by any of the Kobra Defendants or from the city, municipality, county or state on which such Collateral is situated if the Receiver deems it necessary or advisable in her discretion to do so;

(14)   To negotiate, extend, terminate or reject (without penalty), modify, renegotiate, ratify or enter into contracts, leases and/or other agreements effecting or relating to any part or all of the Collateral under the Kobra Defendants' respective tax identification numbers, subject to Plaintiffs' approval with respect to entering into new tenant leases or rejecting existing tenant leases;

(15)   To construct improvements and/or make any repairs to the Collateral that the Receiver deems necessary or appropriate, subject to the express approval of Plaintiffs;

(16)   To apply, obtain and pay any reasonable fees for any lawful license, permit or other governmental approval relating to the Collateral or the operation thereof, confirm the existence of and, to the extent permitted by law, exercise the privileges of any existing license or permit or the operation thereof, and do all reasonable things necessary to protect and maintain such licenses, permits and approvals;

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-4458-7795 3

- 5 -

2:09-cv-03296-JAM-AC

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT RECEIVER TO MANAGE, MAINTAIN AND SELL

(17)   To borrow such funds as may be necessary to satisfy the costs and expenses of the Receivership, to the extent that the net rents, profits and/or income derived from the Collateral are insufficient to satisfy such costs and expenses; provided, however, any such loans would require notice to Plaintiffs and would be subject to any order of this Court appointing the Receiver and provided that Plaintiffs' rights under the applicable loan documents shall not in any way be impaired or otherwise affected in connection with any such indebtedness;

(18)   To receive any funds that may be advanced by Plaintiffs to be used for the preservation, repair, maintenance and protection of the Collateral or payment of fees and expenses of the Receiver and that all funds provided to the Receiver by Plaintiffs be deemed, without filing of any mortgages, deeds of trust or financing statements, secured advances secured by a first and senior lien upon the Collateral, including all rents, profits and/or other income derived from the Collateral, and that the Receiver be further authorized to issue and execute such documents as may be necessary to evidence the obligation to repay the advances, including, but not limited to, the issuance of certificates of indebtedness evidencing the obligation of the receivership estate (and not the Receiver individually) to repay such sums, that the principal sum of each such certificate or document, together with reasonable interest thereon, be payable out of the next available funds from the Collateral and any such payments shall be made prior to any other payments made from the Collateral, that Plaintiffs and Receiver be authorized to negotiate between themselves specific terms of repayment of any loans or advances by Plaintiffs and that the Receiver be authorized to enter into any such agreements with Plaintiffs without further order of this Court;

(19)   To deposit all money and funds collected and received in connection with the Receiver's administration of the Collateral in a depository designated by the Court, entitled "Receiver's Account" (together with the name and number of this action), as required pursuant to L.R. 232(h);

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-4458-7795.3                                    - 6 -                          2:09-cv-03296-JAM-AC

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL

(20)    To present for payment any checks, money orders or other forms of payment made payable to the Kobra Defendants relating to the Collateral which constitute rents, profits and/or income of the Collateral, endorse the same and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein;

(21)    Subject to the requirements of L.R. 150(h), on a monthly basis, to pay reasonable compensation for services as Receiver, including professional services, Receiver deems necessary to retain, at the rates that may be agreeable for payment by Plaintiffs, and to reimburse Receiver for customary actual expenses incurred therewith;

(22)    Subject to the requirements of L.R. 150(h), after expending the necessary funds to operate and maintain the Collateral, and paying all reasonable and necessary costs and expenses associated therewith, the Receiver shall pay to Plaintiffs, by no later than the twentieth calendar day of each month, the remaining funds to be applied by Plaintiffs in accordance with the terms of the applicable loan documents;

(23)    To operate the Collateral, to the extent practicable, in accordance with all applicable requirements of the applicable loan documents;

(24)    To exercise such other necessary or usual powers as is reasonably necessary to secure, maintain and protect the Collateral;

(25)    To execute and prepare all documents and perform all acts necessary to implement the foregoing in the name of the Kobra Defendants or in the Receiver's own name; and

(26)    Such other and further powers as the Court by its order from time to time may grant;

(g)    The officers, managers, agents and employees of the Kobra Defendants, and all other persons interested in the Collateral, are hereby enjoined from interfering with, transferring, selling or disposing of any of the Collateral, or from taking possession of or

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

1  levying upon or attempting to sell or dispose of, in any manner, any part of the Collateral,
2  including, but not limited to, canceling or otherwise terminating, altering or changing any
3  insurance policies (including enjoining the applicable insurance company or provider
4  from canceling or terminating such insurance policies) or other contracts covering all or
5  any part of the Collateral;

6     (h)     To the extent feasible, the Receiver shall file, within thirty (30) days of an
7  order appointing the Receiver, in this action an inventory of all property which the
8  Receiver shall have taken possession pursuant to the Order and that every thirty (30) days
9  thereafter, the Receiver account to the Court for all sums received and expenditures made
10  in association with the receivership and the Collateral and provide copies of such reports
11  to the parties to this action;

12     (i)     The Receiver shall file and serve a report that shall be heard on notice to all
13  parties in accordance with L.R. 230 that contains (i) a summary of the operations of the
14  Receiver, (ii) an inventory of all the assets and their value; (iii) a schedule of all the
15  Receiver's receipts and disbursements; and (iv) the Receiver's recommendations for a
16  continuation or discontinuation of the receivership and the reasons therefor, all in
17  accordance with L.R. 232(e)(2);

18     (j)     The Receiver shall serve until the occurrence of a termination event
19  ("Termination Event") and completion of the winding-up period identified in subsection
20  (m) below. A Termination Event shall include (i) a default by the Receiver under any of
21  its obligations hereunder; (ii) the sale of the Collateral (as defined below); or (iii) the
22  written request of Plaintiff;

23     (k)     Upon the occurrence of a Termination Event, the Receiver shall wind up
24  receivership affairs and distribute all funds as required in the final accounting and report
25  and within forty-five (45) days of the termination of the receivership, the Receiver shall
26  file a final accounting report with the Court and submit a copy to all parties who have
27  entered their appearance in this action, and if no objections to the final accounting and
28  report are delivered to the Court, the Receiver and other parties having entered their

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-4458-7795.3                    - 8 -                    2:09-cv-03296-JAM-AC

1    appearance in this action, by first-class mail to such address as is reflected in the Court

2    records or as may be designated within fifteen (15) days after filed with the Court, the

3    final accounting and report shall be accepted by the Court and the Court shall enter an

4    order terminating the receivership and discharging the Receiver;

5         (l)     Upon notice of entry of this Order, the Kobra Defendants and all persons

6    and/or entities that have been in active participation with the Kobra Defendants

7    (including, but not limited to, employees, officers, shareholders, members, managers,

8    affiliates, banks, accountants, landlords and/or any other entities under common control of

9    the Kobra Defendants) and all persons or entities now in possession of any part of the

10   Collateral and not holding under valid leases or rental agreements shall:

11        (1)     Deliver within five (5) business days to the Receiver or its agents all

12        of the Collateral, properly endorsed to the Receiver when necessary;

13        (2)     Within five (5) business days turn over to the Receiver the possession

14        of the Collateral, including all keys to all locks on the Collateral, and the records,

15        books of account, ledgers and all business records for the Collateral, wherever

16        located in and whatever mode maintained (including, without limitation,

17        information contained on computers and any and all software relating thereto as

18        well as all banking records, statements and canceled checks) for the preceding

19        three (3) years;

20        (3)     Deliver within five (5) business days to the Receiver all contracts,

21        leases, agreements, insurance agreements or policies, the Kobra Defendants'

22        respective tax identification numbers, licenses, permits or governmental approvals,

23        and all other agreements or documents of any kind whatsoever, whether currently

24        in effect or lapsed, relating to or effecting the Collateral;

25        (4)     Answer under oath to the Receiver all questions regarding the

26        maintenance and operation of the Collateral, if necessary, and  in the event that the

27        Receiver deems it necessary to require the appearance of the aforementioned

28        persons, the production of documents, information or any other form of discovery

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-4458-7795.3                    - 9 -                    2:09-cv-03296-JAM-AC
[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL

concerning the assets, property or business assets of the Kobra Defendants, or any other matter relevant to the operation or administration of the receivership estate or the collection of funds due to the Kobra Defendants, the Receiver shall direct notice for any such appearance by certified mail, and said persons shall appear and give answer to the Receiver, produce documents or submit to any other form of discovery within ten (10) calendar days of service of said notice at the time and place designated therein, provided that the Kobra Defendants would not be required to turn over any documents protected from disclosure by either the attorney-client privilege or the attorney work-product privilege;

       (5)    Deliver immediately to the possession and control of the Receiver all rents, profits, proceeds, income, petty cash, accounts receivable, accounts payable, bank accounts and all other income or money whatsoever relating to the Collateral; and

       (6)    Within five (5) business days sign or execute any document necessary to allow the Receiver to carry out the duties set forth herein;

    (m)    All tenants or lessees in possession of any part of the Collateral, and any other persons or entities as may be lawfully in possession of the Collateral, are hereby directed, until further order of this Court, to pay over to the Receiver all Rents of the Collateral now due and unpaid or that may hereafter become due and that all persons or entities liable for such rents be enjoined and restrained from paying any rents for the Collateral to the Kobra Defendants, their agents, servants or attorneys;

    (n)    The Kobra Defendants and their officers, directors, agents, managers, members, representatives, subsidiaries, affiliates and any other employee so designated by the Receiver are hereby enjoined and restrained from involving themselves in the possession, operation or management of the Collateral, or in any way from interfering with the duties or performance of the Receiver, including, but not limited to (i) interfering with the Receiver, directly or indirectly, in the collection of rents, profits and/or any other income derived from the Collateral; (ii) collecting or attempting to collect the rents,

profits, and/or any other income derived from the Collateral; (iii) extending, dispersing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Collateral (including the rents, profits and/or income derived thereof); and (iv) doing any act which will, or which will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Collateral (including the rents, profits and/or income derived thereof) or the interest of Plaintiffs in the Collateral;

(o)     The Receiver shall not be responsible for any utility balances accruing prior to the date that the Order is entered (the "Pre-Existing Balances"), that the Kobra Defendants continue to be liable for the Pre-Existing Balances, and that all utility companies or providers currently servicing any of the real property that is part of the Collateral be enjoined and restrained from denying continued utility service based on the Pre-Existing Balances;

(p)     During the pendency of this receivership, all creditors and other persons seeking possession or control over any part of the Collateral (except for governmental authorities exercising their police powers to protect public health or safety and except for Plaintiffs), and all others acting on behalf of the Kobra Defendants and their respective officers, directors, members, agents and employees, and all other persons acting at their direction or in concert with persons allegedly acting on any of the Kobra Defendants' behalf, including sheriffs, marshals and all other officers and deputies, and their respective attorneys, servants, agents and employees, are hereby temporarily stayed and restrained from doing anything to interfere with the possession, custody, control, use or management by the Receiver of the Collateral during the pendency of the sale process;

(q)     The Receiver is hereby authorized to register this Order with the appropriate government offices and courts and to serve a copy of this Order on any person or entity whom the Receiver reasonably believes to be in control of Collateral;

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-4458-7795.3                         - 11 -                    2:09-cv-03296-JAM-AC
[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL

1    (r)    In the event that the rights and powers granted to the Receiver are
2   terminated, the Court shall ex parte appoint a replacement receiver nominated by
3   Plaintiffs subject to the Court's right to confirm the qualifications of such nominee; and

4    (s)    Upon the filing of (i) the Receiver's sworn oath that she will perform the
5   duties hereunder faithfully and (ii) posting of an undertaking with the Court, as required
6   by and in accordance with L.R. 151 and 232(i) in the amount of $10,000 with respect to
7   the Receiver's duty to faithfully discharge her duties in this action and comply with any
8   Orders entered by this Court relating to the receivership, the Receiver shall be appointed
9   with the powers and authorities specified herein.

10    (t)    The Receiver shall be compensated for her services in the manner set forth
11   in Exhibit J attached hereto and all receivership fees shall be satisfied out of the monthly
12   proceeds of the receivership estate or the proceeds of the Receiver's sale(s), as a cost of
13   the sale(s), each as the case may be;

14    IT IS SO ORDERED.

15   Date: July 30, 2013
16                                HON. JOHN A. MENDEZ
17                                UNITED STATES DISTRICT COURT

18
19   Respectfully submitted by:
    Dated: May 17, 2013             KUTAK ROCK LLP
20

21                     By: /s/ Christopher D. Glos
22                       Christopher D. Glos
                         Alison M. Gutierrez
23                       Attorneys for Plaintiffs
                       GENERAL ELECTRIC CAPITAL
24                       CORPORATION, CEF FUNDING II,
                       L.L.C. and CEF FUNDING V, LLC

25
26
27
28

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4831-4458-7795.3                    - 12 -                2:09-cv-03296-JAM-AC
[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL

## EXHIBIT A

### (Delightful Dining Collateral)

All of Delightful Dining's right, title and interest in: (a) all types of property included within the term "equipment" as defined by the Uniform Commercial Code (except vehicles, boats and airplanes), including machinery, furniture, appliances, trade fixtures, tools, and office and record keeping equipment; (b) all inventory, including all goods held for sale, raw materials, work in process and materials or supplies used or consumed in Delightful Dining's business; (c) all documents; general intangibles; accounts; contract rights; chattel paper and instruments; money; securities; investment properties; deposit accounts; supporting obligations; letters of credit and letter of credit rights; commercial tort claims; and records, software and information contained in computer media (such as data bases, source and object codes and information therein), together with any equipment and software to create, utilize, maintain or process any such records or data on removable media; (d) any and all plans and specifications, designs, drawings and other matters prepared for any construction on any real property owned by or leased to Delightful Dining at the locations described below or regarding any improvements to any of such real property; (e) goodwill; *provided, however*, that the security interest in any franchise, license, or distributorship agreement is subject to the provisions of Section 9-408 of the Uniform Commercial Code; and (f) all replacements and substitutions for, all products, cash and non-cash proceeds (including insurance proceeds and any title and Uniform Commercial Code insurance proceeds) of, any of the foregoing, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith, in each case, to the extent used in connection with or otherwise relating to the operation of the businesses located at the following described real property located in the State of California (the "Delightful Dining Properties"):

| Store No. | Address | City | State |
|-----------|---------|------|-------|
| 262 | 1470 Eureka Road, Suite 170 | Roseville | CA |
| 268 | 10271 Fairway Drive, Suite 140 | Roseville | CA |
| 317 | 10940 Trinity Parkway, Suite H | Stockton | CA |
| 360 | 3654 North Freeway Boulevard, Suite 330 | Sacramento | CA |

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT RECEIVER TO MANAGE, MAINTAIN AND SELL

# EXHIBIT B

## (Ten Forward Borrower Collateral)

All of Ten Forward's right, title and interest in: (a) all types of property included within the term "equipment" as defined by the Uniform Commercial Code (except vehicles, boats and airplanes), including machinery, furniture, appliances, trade fixtures, tools, and office and record keeping equipment; (b) all inventory, including all goods held for sale, raw materials, work in process and materials or supplies used or consumed in Ten Forward's business; (c) all documents; general intangibles; accounts; contract rights; chattel paper and instruments; money; securities; investment properties; deposit accounts; supporting obligations; letters of credit and letter of credit rights; commercial tort claims; and records, software and information contained in computer media (such as data bases, source and object codes and information therein), together with any equipment and software to create, utilize, maintain or process any such records or data on electronic media; (d) any and all plans and specifications, designs, drawings and other matters prepared for any construction on any real property owned by or leased to Ten Forward at the locations described below or regarding any improvements to any of such real property; (e) goodwill; *provided, however*, that the security interest in any franchise, license, or distributorship agreement is subject to the provisions of Section 9-408 of the Uniform Commercial Code; and (f) all replacements and substitutions for, all products, cash and non-cash proceeds (including insurance proceeds and any title and Uniform Commercial Code insurance proceeds) of, any of the foregoing, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith, in each case, to the extent used in connection with or otherwise relating to the operation of the businesses located at the following described real property located in the State of California (the "Ten Forward Properties"):

| Store No. | Address | City | State |
|-----------|---------|------|-------|
| 1117 | 7101 Laguna Blvd. | Elk Grove | CA |
| 1152 | 186 Nut Tree Parkway | Vacaville | CA |

# EXHIBIT C

## (Ten Forward/Delightful Dining Borrower Collateral)

All of Ten Forward's and Delightful Dining's right, title and interest in: (a) all types of property included within the term "equipment" as defined by the Uniform Commercial Code (except vehicles, boats and airplanes), including machinery, furniture, appliances, trade fixtures, tools, and office and record keeping equipment; (b) all inventory, including all goods held for sale, raw materials, work in process and materials or supplies used or consumed in Ten Forward's or Delightful Dining's business; (c) all documents; general intangibles; accounts; contract rights; chattel paper and instruments; money; securities; investment properties; deposit accounts; supporting obligations; letters of credit and letter of credit rights; commercial tort claims; and records, software and information contained in computer media (such as data bases, source and object codes and information therein), together with any equipment and software to create, utilize, maintain or process any such records or data on electronic media; (d) any and all plans and specifications, designs, drawings and other matters prepared for any construction on any real property owned by or leased to Ten Forward or Delightful Dining at the locations described below or regarding any improvements to any of such real property; (e) goodwill; *provided, however,* that the security interest in any franchise, license, or distributorship agreement is subject to the provisions of Section 9-408 of the Uniform Commercial Code; and (f) all replacements and substitutions for, all products, cash and non-cash proceeds (including insurance proceeds and any title and Uniform Commercial Code insurance proceeds) of, any of the foregoing, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith, in each case, to the extent used in connection with or otherwise relating to the operation of the businesses located at the Delightful Dining Properties.

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL

## EXHIBIT D

### (TGIA Borrower Collateral)

All of TGIA's right, title and interest in all of the equipment, machinery, furniture, trade fixtures, replacements, substitutions, additions, parts and accessories, including, without limitation, fryers, grills, ovens, warmers, refrigerators, freezers, waste disposal units, dishwashers, beverage dispensers, ice cream makers, racks, display cases, light fixtures, decor, counters, cash registers, salad equipment, tables, seating, signs and similar property of TGIA, together with all income therefrom and proceeds thereof, in each case, to the extent located at the following described real property located in the State of California (the "TGIA Properties"):

| Address | City | State |
|---|---|---|
| 1168 Galleria Blvd. | Roseville | CA |
| 6307 Sunrise Blvd. | Citrus Heights | CA |
| 1229 Howes Ave. | Sacramento | CA |

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT RECEIVER TO MANAGE, MAINTAIN AND SELL

# EXHIBIT E

### (11726 Kobra Collateral)

All of Kobra's right, title and interest in and to (a) the 11726 Kobra Property (as specifically described below), together with all rights, privileges and appurtenances associated therewith and all buildings, fixtures and other improvements now or hereafter located thereon (whether or not affixed to such real estate); (b) all rents, issues, profits, royalties, income and other benefits derived from the 11726 Kobra Property and the 11726 Kobra Personal Property (as defined below); all leases or subleases covering the 11726 Kobra Property, the 11726 Kobra Personal Property or any portion thereof now or hereafter existing or entered into (collectively, "11726 Kobra Leases"), including, without limitation, all cash or security deposits, advance rentals and deposits or payments of similar nature and all guaranties relating to the 11726 Kobra Leases; all options to purchase or lease the 11726 Kobra Property, the 11726 Kobra Personal Property or any portion thereof or interest therein, and any greater estate in the 11726 Kobra Property or the 11726 Kobra Personal Property; all interests, estate or other claims, both in law and in equity, with respect to the 11726 Kobra Property and the 11726 Kobra Personal Property; all easements, rights-of-way and rights used in connection therewith or as a means of access thereto, and all tenements, hereditaments and appurtenances thereof and thereto, and all water rights and shares of stock evidencing the same; all land lying within the right-of-way of any street, open or proposed, adjoining the 11726 Kobra Property and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the 11726 Kobra Property; (c) all tangible personal property now or at any time hereafter located on or at the 11726 Kobra Property or used in connection therewith, including, without limitation, all machinery, furniture, equipment and inventory (collectively, the "11726 Kobra Personal Property"); (d) all existing and future accounts, contract rights, including, without limitation, with respect to equipment leases, general intangibles, files, books of account, agreements, franchise, license and/or area development agreements, distributor agreements, indemnity agreements, permits, licenses and certificates necessary or desirable in connection with the acquisition, ownership, leasing, construction, operation, servicing or management of the 11726 Kobra Property and the 11726 Kobra Personal Property or any portion thereof, whether now existing or entered into or obtained after the date hereof, all existing and future names under or by which the 11726 Kobra Property or the 11726 Kobra Personal Property or any portion thereof may at any time be operated or known, all rights to carry on business under any such names or any variant thereof, and all existing and future telephone numbers and listings, advertising and marketing materials, trademarks and goodwill in any way relating to the 11726 Kobra Property or the 11726 Kobra Personal Property or any portion thereof; and (e) all the claims or demands with respect to the 11726 Kobra Property and the 11726 Kobra Personal Property or any portion thereof, including, without limitation, claims or demands with respect to the proceeds of insurance in effect with respect thereto, claims under any indemnity agreement, including, without limitation, any indemnity agreement executed for the benefit of the 11726 Kobra Property and the 11726 Kobra Personal Property or any portion thereof with respect to hazardous materials, and any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu

4831-4458-7795.3 — 17 — 2:09-cv-03296-JAM-AC

1    thereof, of the whole or any part of the 11726 Kobra Property or the 11726
2    Kobra Personal Property, including, without limitation, any awards
     resulting from a change of grade of streets and awards for severance
3    damages.

4
     The 11726 Kobra Property is specifically described as follows:
5
6    THE LAND DESCRIBED IS SITUATED IN THE STATE OF
     CALIFORNIA, COUNTY OF SHASTA, CITY OF REDDING AND IS A
     PORTION OF BLOCK C OTTONELLO SUBDIVISION AND THE
7    EAST HALF OF THE NORTHEAST QUARTER OF SECTION 6,
     TOWNSHIP 31 NORTH, RANGE 4 WEST, M.D.M. & M, BEING MORE
8    PARTICULARLY DESCRIBED AS FOLLOWS:

9    COMMENCING AT THE NORTHWEST CORNER OF LOT 4, BLOCK
     C AS SHOWN ON THE MAP ENTITLED THE OTTONELLO
10   SUBDIVISION, FILED IN BOOK 6 OF MAPS AT PAGE 24, SHASTA
     COUNTY RECORDS;
11
     THENCE SOUTH 88°48' EAST 13.00 FEET TO THE NORTHERLY
12   RIGHT OF WAY OF HILLTOP AVENUE, ALSO BEING THE
     NORTHWESTERLY CORNER OF THE LAND DESCRIBED IN THE
13   GRANT DEED TO KOBRA PROPERTIES, FILED IN BOOK 3298 OF
     OFFICIAL RECORDS AT PAGE 797, SHASTA COUNTY RECORDS,
14   SAID POINT BEING THE TRUE POINT OF BEGINNING;

15   THENCE ALONG THE NORTHERLY LINE OF SAID LOT 4 SOUTH
     88°48' EAST 137.00 FEET TO THE NORTHEAST CORNER OF SAID
16   LOT 4; THENCE SOUTH 88°48' EAST 35.56 FEET TO THE
     NORTHWEST CORNER OF THE LAND DESCRIBED IN THE GRANT
17   DEED TO BURGER KING CORPORATION, FILED IN BOOK 1360 OF
     OFFICIAL RECORDS AT PAGE 612, SHASTA COUNTY RECORDS,
18   THENCE ALONG THE EAST LINE OF THE ABOVEMENTIONED
     LANDS SOUTH 00°20'00" WEST 169.71 FEET TO THE NORTH LINE
19   OF THE RIGHT OF WAY OF CYPRESS AVENUE; THENCE
     WESTERLY ALONG SAID RIGHT OF WAY NORTH 89°40'00" WEST
20   38.13 FEET TO THE SOUTHEAST CORNER OF LOT 3, BLOCK C OF
     THE AFOREMENTIONED OTTONELLO SUBDIVISION; THENCE
21   CONTINUING ALONG SAID RIGHT OF WAY NORTH 89°40'00"
     WEST 106.56 FEET TO A TANGENT CURVE TO THE RIGHT WITH A
22   RADIUS OF 30.00 FEET AND A DELTA OF 90°52'00"; THENCE
     ALONG THE ARC A LENGTH OF 47.58 FEET; THENCE
23   CONTINUING ALONG THE EASTERLY RIGHT OF WAY OF
     HILLTOP DRIVE NORTH 1°12'00" EAST 141.89 TO THE TRUE
24   POINT OF BEGINNING.

25   APN 107-210-052

26

27

28   4831-4458-7795.3                    - 18 -                2:09-cv-03296-JAM-AC

## EXHIBIT F

### (11794 Kobra Collateral)

All of Kobra's right, title and interest in and to (a) the 11794 Kobra Property (as specifically described below), together with all rights, privileges and appurtenances associated therewith and all buildings, fixtures and other improvements now or hereafter located thereon (whether or not affixed to such real estate); (b) all rents, issues, profits, royalties, income and other benefits derived from the 11794 Kobra Property and the 11794 Kobra Personal Property (as defined below); all leases or subleases covering the 11794 Kobra Property, the 11794 Kobra Personal Property or any portion thereof now or hereafter existing or entered into (collectively, "11794 Kobra Leases"), including, without limitation, all cash or security deposits, advance rentals and deposits or payments of similar nature and all guaranties relating to the 11794 Kobra Leases; all options to purchase or lease the 11794 Kobra Property, the 11794 Kobra Personal Property or any portion thereof or interest therein, and any greater estate in the 11794 Kobra Property or the 11794 Kobra Personal Property; all interests, estate or other claims, both in law and in equity, with respect to the 11794 Kobra Property and the 11794 Kobra Personal Property; all easements, rights-of-way and rights used in connection therewith or as a means of access thereto, and all tenements, hereditaments and appurtenances thereof and thereto, and all water rights and shares of stock evidencing the same; all land lying within the right-of-way of any street, open or proposed, adjoining the 11794 Kobra Property and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the 11794 Kobra Property; (c) all tangible personal property now or at any time hereafter located on or at the 11794 Kobra Property or used in connection therewith, including, without limitation, all machinery, furniture, equipment and inventory (collectively, the "11794 Kobra Personal Property"); (d) all existing and future accounts, contract rights, including, without limitation, with respect to equipment leases, general intangibles, files, books of account, agreements, franchise, license and/or area development agreements, distributor agreements, indemnity agreements, permits, licenses and certificates necessary or desirable in connection with the acquisition, ownership, leasing, construction, operation, servicing or management of the 11794 Kobra Property and the 11794 Kobra Personal Property or any portion thereof, whether now existing or entered into or obtained after the date hereof, all existing and future names under or by which the 11794 Kobra Property or the 11794 Kobra Personal Property or any portion thereof may at any time be operated or known, all rights to carry on business under any such names or any variant thereof, and all existing and future telephone numbers and listings, advertising and marketing materials, trademarks and goodwill in any way relating to the 11794 Kobra Property or the 11794 Kobra Personal Property or any portion thereof; and (e) all the claims or demands with respect to the 11794 Kobra Property and the 11794 Kobra Personal Property or any portion thereof, including, without limitation, claims or demands with respect to the proceeds of insurance in effect with respect thereto, claims under any indemnity agreement, including, without limitation, any indemnity agreement executed for the benefit of the 11794 Kobra Property and the 11794 Kobra Personal Property or any portion thereof with respect to hazardous materials, and any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu

thereof, of the whole or any part of the 11794 Kobra Property or the 11794 Kobra Personal Property, including, without limitation, any awards resulting from a change of grade of streets and awards for severance damages.

The 11794 Kobra Property is specifically described as follows:

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF NEVADA, UNINCORPORATED AREA, AND IS DESCRIBED AS FOLLOWS:

THAT CERTAIN PARCEL OF LAND SITUATED ON THE SOUTHEAST SIDE OF THE GRASS VALLEY NEVADA CITY HIGHWAY IN THE EAST HALF OF SECTION 23, TOWNSHIP 16 NORTH, RANGE 8 EAST, M.D.B. & M., PARTICULARLY DESCRIBED AS FOLLOWS, TO-WIT:

COMMENCING AT A POINT ON THE SOUTHEASTERLY LINE OF THAT CERTAIN PARCEL OF LAND AS CONVEYED BY THAT CERTAIN DEED EXECUTED BY RUTH FLOYD, A WIDOW TO C.H. TRUBSCHENCK, SR., AND J.L. STRICKLAND, DATED AUGUST 21, 1946 AND RECORDED IN BOOK 124 OF OFFICIAL RECORDS OF NEVADA COUNTY, PAGE 385, ET SEQ., FROM WHICH THE ONE-QUARTER SECTION CORNER ON THE EAST SIDE OF SAID SECTION 23 BEARS SOUTH 45 DEGREES 10' EAST 456.59 FEET; THENCE FROM SAID POINT OF COMMENCEMENT SOUTH 52 DEGREES 58' WEST 160.00 FEET TO THE SOUTHEASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED BY C.K. TRUBSCHENCK, SR., ET AL, TO WAYNE THORNBERG, ET UX, IN DEED DATED JANUARY 3, 1948, THENCE RUNNING ALONG THE NORTHEASTERLY LINE OF SAID THORNBERG PROPERTY, NORTH 37 DEGREES 01' WEST 207.40 FEET TO A POINT ON THE SOUTHEASTERLY LINE OF SAID STATE HIGHWAY; THENCE ALONG SAID SOUTHEASTERLY LINE NORTH 53 DEGREES 03' EAST 22.13 FEET AND NORTH 52 DEGREES 50' EAST 137.87 FEET; THENCE LEAVING SAID LINE AND RUNNING SOUTH 37 DEGREES 01' EAST 207.69 FEET TO THE PLACE OF BEGINNING.

EXCEPTING THEREFROM THE MINERAL BELOW 100 FEET OF THE SURFACE AS CONVEYED BY THE DEED DATED SEPTEMBER 29, 1937, RECORDED NOVEMBER 1, 1937, IN BOOK 39, OF OFFICIAL RECORDS, PAGE 230, EXECUTED BY JESSIE HINDS AND E.G. HINDS, HER HUSBAND TO FRANK FINNEGAN.

ALSO EXCEPTING THEREFROM ALL THAT PORTION CONVEYED BY THE DEED DATED OCTOBER 24, 1980, RECORDED NOVEMBER 6, 1980, OFFICIAL RECORDS, DOCUMENT NO. 80-30894, EXECUTED BY NORTHERN CALIFORNIA FOOD SERVICES, INC., TO THE COUNTY OF NEVADA.

# EXHIBIT G

## (Ten Forward Guarantor Collateral)

All of Alizadeh's right, title and interest in: (a) all types of property included within the term "equipment" as defined by the Uniform Commercial Code (except vehicles, boats and airplanes), including machinery, furniture, appliances, trade fixtures, tools, and office and record keeping equipment; (b) all inventory, including all goods held for sale, raw materials, work in process and materials or supplies used or consumed in Ten Forward's business; (c) all documents; general intangibles; accounts; contract rights; chattel paper and instruments; money; securities; investment properties; deposit accounts; supporting obligations; letters of credit and letter of credit rights; commercial tort claims; and records, software and information contained in computer media (such as data bases, source and object codes and information therein), together with any equipment and software to create, utilize, maintain or process any such records or data on electronic media; (d) any and all plans and specifications, designs, drawings and other matters prepared for any construction on any real property owned by or leased to Ten Forward at the locations described below or regarding any improvements to any of such real property; (e) goodwill; *provided, however*, that the security interest in any franchise, license, or distributorship agreement is subject to the provisions of Section 9-408 of the Uniform Commercial Code; and (f) all replacements and substitutions for, all products, cash and non-cash proceeds (including insurance proceeds and any title and Uniform Commercial Code insurance proceeds) of, any of the foregoing, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith, in each case, to the extent used in connection with or otherwise relating to the operation of the businesses located at the following described real property located in the State of California (the "Ten Forward Properties"):

| Store No. | Address | City | State |
|-----------|---------|------|-------|
| 1117 | 7101 Laguna Blvd. | Elk Grove | CA |
| 1152 | 186 Nut Tree Parkway | Vacaville | CA |

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT RECEIVER TO MANAGE, MAINTAIN AND SELL

**EXHIBIT H**

**(Ten Forward/Delightful Dining Guarantor Collateral)**

All of Alizadeh's right, title and interest in: (a) all types of property included within the term "equipment" as defined by the Uniform Commercial Code (except vehicles, boats and airplanes), including machinery, furniture, appliances, trade fixtures, tools, and office and record keeping equipment; (b) all inventory, including all goods held for sale, raw materials, work in process and materials or supplies used or consumed in Ten Forward's business; (c) all documents; general intangibles; accounts; contract rights; chattel paper and instruments; money; securities; investment properties; deposit accounts; supporting obligations; letters of credit and letter of credit rights; commercial tort claims; and records, software and information contained in computer media (such as data bases, source and object codes and information therein), together with any equipment and software to create, utilize, maintain or process any such records or data on electronic media; (d) any and all plans and specifications, designs, drawings and other matters prepared for any construction on any real property owned by or leased to Ten Forward at the Ten Forward Properties or regarding any improvements to any of such real property; (e) goodwill; *provided, however*, that the security interest in any franchise, license, or distributorship agreement is subject to the provisions of Section 9-408 of the Uniform Commercial Code; and (f) all replacements and substitutions for, all products, cash and non-cash proceeds (including insurance proceeds and any title and Uniform Commercial Code insurance proceeds) of, any of the foregoing, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith, in each case, to the extent used in connection with or otherwise relating to the operation of the businesses located at the Ten Forward Properties.

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT RECEIVER TO MANAGE, MAINTAIN AND SELL

# EXHIBIT I

## (TGIA Guarantor Collateral)

All of Alizadeh's right, title and interest in: (a) all types of property included within the term "equipment" as defined by the Uniform Commercial Code (except vehicles, boats and airplanes), including machinery, furniture, appliances, trade fixtures, tools, and office and record keeping equipment; (b) all inventory, including all goods held for sale, raw materials, work in process and materials or supplies used or consumed in TGIA's business; (c) all documents; general intangibles; accounts; contract rights; chattel paper and instruments; money; securities; investment properties; deposit accounts; supporting obligations; letters of credit and letter of credit rights; commercial tort claims; and records, software and information contained in computer media (such as data bases, source and object codes and information therein), together with any equipment and software to create, utilize, maintain or process any such records or data on electronic media; (d) any and all plans and specifications, designs, drawings and other matters prepared for any construction on any real property owned by or leased to TGIA at the TGIA Properties or regarding any improvements to any of such real property; (e) goodwill; *provided, however*, that the security interest in any franchise, license, or distributorship agreement is subject to the provisions of Section 9-408 of the Uniform Commercial Code; and (f) all replacements and substitutions for, all products, cash and non-cash proceeds (including insurance proceeds and any title and Uniform Commercial Code insurance proceeds) of, any of the foregoing, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith, in each case, to the extent used in connection with or otherwise relating to the operation of the businesses located at the TGIA Properties.

4831-9458-7795.3

2:09-cv-03296-JAM-AC

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

(Del

light

htful

ul

Dini

ing

llate

teral

al)

26

27

28

**EXHIBIT J**

**(Receiver's Compensation)**

**[See attached]**

4831-4458-7795.3

- 24 -

2:09-cv-03296-JAM-AC

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

[PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR APPOINTMENT OF A POST-JUDGMENT
RECEIVER TO MANAGE, MAINTAIN AND SELL



# CORDES
### CORDES&COMPANY

## JACK IN THE BOX PROPERTIES

## RECEIVERSHIP PROPOSAL

January 2, 2013

Cordes & Company, LLC
4400 MacArthur Boulevard, Suite 980
Newport Beach, CA  92660
T: 949.379.1202

Exh. J000025





**CORDES**
CORDES&COMPANY

4400 MacArthur Boulevard, Suite 980
Newport Beach, CA  92660
T· 949.379.1202
**CordesCo.Com**

January 2, 2013

Mr. Mike VanGrunsven
GE Capital – Franchise Finance

Dear Mr. VanGrunsven,

Enclosed you will find our proposal for to the potential receivership related to the Jack in the Box locations in Grass Valley and Redding. CA.  I believe you will find that Cordes & Company is well positioned for this assignment and our experienced and professional team will offer the most flexible and valuable set of services in the California market.

I have spent over 20 years of my career as a professional receiver and am a Managing Director at Cordes & Company.  My firm has provided receivership and related services since 1983 and has offices in California, Colorado, Minnesota, Arizona and Nevada.  I am supported by a team of experienced professionals with expertise in real estate, accounting, management and banking.  I have extensive specific experience working with office buildings.

Attached to this letter are the following exhibits that respond to your Request for Proposal:

    I.      Proposed Team
    II.     Proposed Fees
    III.    References – more references are available upon request.

I appreciate the opportunity to provide this proposal and we look forward to working with GE Capital if selected to be receiver of this property.

Please contact me directly if you have further questions about this proposal.

Very truly yours,

Bellann Raile
Cordes & Company

Exh. J000026





**BELLANN RAILE**

Ms. Raile is a Managing Director of Cordes & Company and a senior level executive with 20 years of receivership experience. She has been the Receiver or manager for well over 150 receiverships. Ms. Raile has extensive experience with commercial and residential real estate, operations management, senior housing, environmentally impacted properties, construction oversight, property management and retail operations. Ms. Raile is particularly adept at crisis management and obtaining cooperation of the various parties involved in receiverships, including contentious and litigated disputes. Her role will be as the Receiver, overseeing all aspects of the project, including working with the various parties to achieve the best result for the property and the assorted stakeholders.

**ROBERT WATTS**

Mr. Watts is an experienced real estate and banking executive with 25 years experience in special loans on commercial real estate. Mr. Watts has worked with commercial loan restructures, foreclosures, bankruptcies, asset management and disposal of assets. He brings strong marketing skills, broker contacts and asset management skills to the receivership. He has extensive nationwide experience with office, retail, industrial and land development projects. In the last three years he as disposed of over $250M of office, retail and land properties

Other member of the Cordes & Company team will support Ms. Raile on this engagement and will charge their time spent on the engagement accordingly. The total expenses associated for all team members are described in Section II.

Ms. Raile was the receiver for the following engagements and Mr. Watts and other members of the Cordes & Company team assisted Ms. Raile on these assignments:

- **Irvine Center**, a 317,000 sf class A office building.
- **801 Gateway**, a 136,000 sf class A office building.
- **Medina Properties**, five commercial properties with a common debtor.
- **The Commons at Chino Hills**, a 530,000 sf commercial power center.
- **The Shoppes at Chino Hills**, a 380,000 sf upscale life style shopping complex.
- **Camarillo Ranch**, a 128,000 sf office building/office condominium complex.
- **Fremont Tech Center**, a 5.25 acre technology center featuring flex space.
- **Horizon Tech Center**, a 158,000 sf LEED certified corporate headquarters campus.
- **Pacifica at Newport Plaza**, a 32-unit luxury condominium development.

A more complete list of Cordes & Company assignments can be found at www.cordesco.com.



This engagement will be billed on a time and materials basis. Receiver fees and expenses will be detailed and invoiced on a monthly basis. Hourly rates for Ms. Raile and supporting Cordes & Company team members are as follows:

| | |
|---|---|
| Bellann Raile / Managing Directors | $325.00 |
| Robert Watts / Project Managers | $220.00 |
| Para-Professionals | $125.00-$185.00 |
| Administrative | $40.00 - $100.00 |

Fees charged by Ms. Raile and the Cordes & Company team include all **receivership** and **reporting** duties as prescribed by the receivership order.

Receivership duties typically include interacting with both the debtor's and the plaintiff's counsel; managing property takeover issues, including meetings and discussions with tenants; the marketing of the properties and assuming all other duties normally handled by owner of the property. We estimate receivership related fees of approximately $12,500 for the first month and $5,000 per month thereafter. If an acceptable offer to purchase the locations is received and the Receiver must go through the process of obtaining court approval for the sale, the fees will be similar to the first month estimated fees. We anticipate that the receivership would last four to five months.

Reporting responsibilities typically include initial inventory reports, monthly operational and financial reports to all parties, and final reporting and accounting to the court and all parties. Weekly or bi-weekly status reports are also provided depending upon the needs of the various parties. We estimate reporting related fees of approximately $2,500 the first month and $1,500 per month thereafter.

Overall professional fees for Ms. Raile as Receiver and Cordes & Company support are estimated at **approximately $15,000 the first month and $6,500 per month thereafter.** If the cases are filed in the same court, the fees for reporting should be less by approximately $750 a month.

**Brokerage** services will be provided by a professional and experienced third-party brokerage firm at market rates if determined necessary. However, if the Receiver is able to negotiate an acceptable sale of the properties an outside broker will not be utilized and no commission will be owed.

The use of attorneys and other professionals is expected to be limited to supporting a sale transaction, if applicable, or other unforeseen difficulties or issues. Otherwise, attorney and other professional fees will be minimal.

These fee estimates are based on our experiences with similar properties and situations. Actual fees may vary materially depending upon unforeseen events. All fees are subject to court approval.

Exh. J000028

**CORDES**
CORDES&COMPANY

**Mr. Joseph Fuszard**
Senior Vice President, Bank of America
(949) 794-7110

*Handled numerous receiverships of which Bank of America was the Plaintiff, including the sale of the 2050 Main Building, Irvine, CA.*

**Mr. Jeffery Goddard**
Executive Vice President, Pacific Western Bank
(949) 341-1686

*Handled numerous receiverships of which Pacific Western Bank was the Plaintiff.*

**Mr. Eric Pezold, Esq.**
Attorney, Snell & Wilmer
(714) 427-7414

*Represented various Plaintiffs in numerous receiverships in which Bellann Raile was the receiver.*

Exh. J000029